**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

KEITH GROSS

              Plaintiff,

    v.

PHILIP LETSOU

           Defendant.

Civil Action No. 5:26-cv-00021-MW-MJF

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT ........................................................................................................... 7

    I.    Count One Should Be Dismissed Because Plaintiff Fails to State a Defamation Per Se Claim. ................................................................. 8

        A.    Plaintiff's Newspaper Statement Claim Fails as a Matter of Law. ................................................................................... 9

            1.    Plaintiff's Newspaper Statement Claim Is Barred by the Statute of Limitations. ............................................. 9

            2.    Plaintiff Fails to Plausibly Allege Actual Malice .......... 10

            3.    The "Record of Fraud" Language Is Not Defamatory in Context. ................................................ 16

        B.    Plaintiff's Press Release Statement Claim Fails as a Matter of Law. ................................................................................... 17

            1.    The Complaint Fails to Allege That the Majority of the Press Release Was Attributable to Mr. Letsou. ........ 17

            2.    Plaintiff Fails to Plausibly Allege Actual Malice .......... 19

            3.    The "Illegal Activity" Language Is Not Defamatory in Context. ............................................................. 20

-ii-

II. Count Two Should Be Dismissed Because Plaintiff Fails to State a Defamation Claim.................................................................22

    A.    Plaintiff's Newspaper Statement Claim Is Barred by the Statute of Limitations.............................................................23

    B.    Plaintiff Fails to Plausibly Allege Actual Malice. ....................24

    C.    Plaintiff's Press Release Statement Claims Fail on Additional Grounds.................................................................27

III. The Court Should Award Fees to Defendant Pursuant to Florida's Anti-SLAPP Statute.........................................................28

CONCLUSION.................................................................................................30

# TABLE OF AUTHORITIES[*]

**Cases**

*Akai Custom Guns, LLC v. KKM Precision, Inc.*,
  707 F. Supp. 3d 1273 (S.D. Fla. 2023) ...................................................... 21, 27

*Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830 (Fla. Dist. Ct. App. 2007) ................18

*Ashcroft v. Iqbal*, 556 U.S. 663 (2009) ...............................................................6, 13

*\*B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-
  CIV, 2017 WL 8751751 (S.D. Fla. Jan. 25, 2017)................................................21

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)..........................................6, 17

*Bose Corp. v. Consumers Union,* 466 U.S. 485 (1984)............................................14

*Bravo v. United States*, 577 F.3d 1324 (11th Cir. 2009) ..........................................7

*Buckley v. Valeo,* 424 U.S. 1 (1976) ........................................................................2

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,
  936 F. Supp. 917 (M.D. Fla. 1996)........................................................................17

*\*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021) ....................................................................... 11, 25

*Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021).................11

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ........................................................7

*Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185 (11th Cir. 1999) ............................12

*E. Air Lines, Inc. v. Gellert*, 438 So. 2d 923 (Fla. Dist. Ct. App. 1983) ..................8

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006)...............................28

*From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52 (Fla. Dist. Ct. App. 1981).....20

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007)...................................3

*\*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)................................................................................ 14, 25, 26

*Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002) ..................................................16

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008).......................................8

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

*Logue v. Book*, 297 So. 3d 605 (Fla. Dist. Ct. App. 2020) .....................................28

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ......................................12

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) ...............................30

*\*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) ......................................................... 14, 15, 26

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ...................................29

*Meyer v. Grant*, 486 U.S. 414 (1988) .....................................................................2

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ....................... *passim*

*Mishiyev v. Davis*, 402 So. 3d 443 (Fla. Dist. Ct. App. 2025) ...............................29

*Molinos Valle Del Cibao, C. por A. v. Lama*,
   633 F.3d 1330 (11th Cir. 2011) ...................................................................6

*\*Moore v. Cecil*, No. 23-13531,
   2026 WL 1109336 (11th Cir. Apr. 24, 2026) ............................................... *passim*

*Mueller v. The Fla. Bar*, 390 So. 2d 449 (Fla. Dist. Ct. App. 1980) ......................18

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ......................................................2

*Palm Beach Newspapers, Inc. v. Early*,
   334 So. 2d 50 (Fla. Dist. Ct. App. 1976) .........................................................27

*\*St. Amant v. Thompson,* 390 U.S. 727 (1968) ................................................ 11, 26

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007) ..............................7

*Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269 (S.D. Fla. 2023) ........27

*Turner v. Wells*, 198 F. Supp. 3d 1355 (S.D. Fla. 2016) ...........................................7

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) ..................................................6, 8

*U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015) ......................7

*Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*,
   629 So. 2d 113 (Fla. 1993) .......................................................................9, 10

*Wolfson v. Kirk*, 273 So. 2d 774 (Fla. Dist. Ct. App. 1973) .....................................8

**Statutes**

Fla. Stat. § 768.295 (2015)....................................................................................29

Fla. Stat. § 770.07  (2012)....................................................................................10

Fla. Stat. § 95.031  (2012)..................................................................................9, 10

Fla. Stat. § 95.11(4)(g) (2012) ...........................................................................9, 10

18 U.S.C. § 1001 .................................................................................................20

52 U.S.C. § 30109 ...............................................................................................20

**Other Authorities**

11 C.F.R. § 111.4(c)............................................................................................20

Restatement (Second) of Torts § 566 (1977).......................................................8, 16

**Rules**

Fed. R. Civ. P. 12 .................................................................................................6

**INTRODUCTION**

This case is a textbook Strategic Lawsuit Against Public Participation (SLAPP). It was filed to retaliate against the defendant for critical public comments made during a long-since-concluded political campaign, and to deter any future critics from discussing Plaintiff's professional and electoral history.

Plaintiff Keith Gross is currently running for office in the 2026 Republican congressional primary for Florida's Second District. In the last electoral cycle, Mr. Gross ran unsuccessfully for U.S. Senate. Defendant Mr. Letsou—along with his then-employer, the National Republican Senatorial Committee (NRSC)—opposed Mr. Gross's candidacy. In public comments made in a press release and to newspapers at the time, Mr. Letsou expressed concerns about Mr. Gross's compliance with campaign finance law, his past business dealings, and his prior history of running as a member of a different political party.

Those comments were protected political speech under the First Amendment. Many were pure opinion statements, based on publicly reported facts. None rose to the level of defamation or defamation per se. But Mr. Gross, frustrated he failed in his candidacy for office, now dislikes these comments. And that is the *sole* basis for the present lawsuit: years after the fact, Mr. Gross now claims that Mr. Letsou's comments rose to the level of defamation—and, further, that Mr. Letsou's comments were made with *actual malice*.

1

Mr. Gross's Complaint establishes nothing of the sort. His defamation per se claim is time barred in large part, with the sole remaining statement being protected pure opinion. And his defamation claim fails for the same reasons. Furthermore, at no juncture does Mr. Gross come close to pleading that *any* of Mr. Letsou's statements were made with actual malice. The rough-and-tumble nature of American politics has never been an excuse to ignore the First Amendment. Rather, political speech lies "at the core of our electoral process and of the First Amendment freedoms," *Buckley v. Valeo,* 424 U.S. 1, 39 (1976) (internal citation omitted), where the Constitution's protection of robust discussion "is at its zenith," *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (cleaned up). There is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Because this lawsuit is meritless and was filed for the sole purpose of penalizing Mr. Letsou's protected political speech, the Court should dismiss the Complaint and award Mr. Letsou fees and costs pursuant to Florida's anti-SLAPP statute.

## BACKGROUND

Keith Gross unsuccessfully ran in the 2024 Republican Senate primary in Florida. *See* Compl. ¶ 1, Ex. B.[1] During the primary, Mr. Gross's campaign failed to attract support from prominent political stakeholders. Ex. B. Instead, the national political party and its affiliates backed his opponent. Ex. B. Mr. Gross found this frustrating, as his campaign conveyed to the media at the time. Ex. B. In particular, Mr. Gross groused that the national party infrastructure was "putting their thumb on the scale in favor of one candidate over another in my election[.]" Ex. B. A spokesperson for Mr. Gross's campaign even accused his opponent's "cronies at the NRSC" of "doing his dirty work." Ex. B.

But there was a reason national leaders chose to support the incumbent Senator. Mr. Gross's credibility as a *bona fide* Republican candidate was a key issue in the campaign. Ex. B. That was because Mr. Gross had, twice previously, run for office in the Georgia legislature—in 2008 and 2010—as a member of the Democratic Party. Ex. B. Mr. Gross's "business dealings" were also in "question[]" during the campaign. Ex. B. Given this history, Mr. Letsou's employer chose to back Mr. Gross's opponent in the primary. *See* Ex. B.

---

[1] The facts contained in exhibits attached to the complaint may be considered on a motion to dismiss. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

3

During this Florida primary campaign, Mr. Letsou worked as a spokesperson for the NRSC. Ex. C. Consistent with the NRSC's institutional interest in supporting *bona fide* Republican candidates for office, Mr. Letsou commented critically regarding Mr. Gross. Exs. A–C. His commentary referenced both Mr. Gross's prior candidacy as a member of the opposite political party and ongoing concerns regarding Mr. Gross's business practices. Ex. B.

In the course of this same primary, the NRSC filed a complaint against Mr. Gross with the Federal Election Commission, relating to Mr. Gross's alleged use of corporate assets to bolster his campaign. Ex. A. Mr. Letsou provided a quote for an NRSC press release that announced the filing of the FEC complaint, summarized the central allegation in that complaint, and advocated against Mr. Gross's candidacy. Ex. A.

Unsurprisingly, Mr. Letsou's were not the only critical comments made during the contentious primary campaign. During the course of the campaign, Mr. Gross repeatedly attacked his opponent. He told the press, for example, that his opponent was a "proven fraud" and an "ineffective crook." Ex. B. He also charged that his opponent "ha[d] lied his whole life." Ex. B. To Mr. Letsou's knowledge, Mr. Gross's opponent in that race has not sued Mr. Gross for any of his comments— presumably because they took place in the heat of a political campaign.

Mr. Gross went on to lose the primary election. *See* Compl. ¶ 1. Yet on January 22, 2026—nearly two years after the 2024 Republican primary for Florida Senate—Mr. Gross filed his Complaint against Mr. Letsou. Mr. Gross now alleges one count of defamation per se and one count of defamation, based on a handful of statements made by Mr. Letsou in an NRSC press release and in a comment made to *The Hill*, which was republished by *The Daily Caller*. Two of those statements form the basis of Mr. Gross's defamation per se claim. Seven appear to form the basis of his defamation claim. The Statements can be grouped as follows:

(1) The "Newspaper Statement," which relates to a comment made by Mr. Letsou to *The Hill* that was subsequently republished by *The Daily Caller*, *see* Compl. ¶¶ 8–9.

(2) The "Press Release Statements," which relate to the NRSC's press release opposing Mr. Gross and the included quote from Mr. Letsou, *see* Compl. ¶¶ 5–7.

## STANDARD OF REVIEW

The Court should dismiss the Complaint because it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). While at the motion to dismiss stage, a court must "accept as true all of the allegations contain in a complaint," that principle is "inapplicable to legal conclusions." *Id.* at 678. Thus, a court may not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). Further, in the Eleventh Circuit, actual malice in defamation cases is subject to the plausibility pleading standard, under which a suit "may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Since the Court is sitting in diversity jurisdiction, this Court applies Florida substantive law when analyzing Mr. Gross's defamation claims. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). This includes following the rule of the Florida Supreme Court where it has spoken on a question. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011). However, where that Court has not done so, decisions of the Florida District Courts of Appeal provide guidance for

6

this Court to follow, in the absence of persuasive authority indicating that the Florida Supreme Court would not do likewise. *See Bravo v. United States*, 577 F.3d 1324, 1325–26 (11th Cir. 2009).

This Court may consider any document either attached to or incorporated in the complaint without converting the motion into one for summary judgment where (1) the document is central to the plaintiff's claim, and (2) the document's authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). The Court may also take judicial notice of documents that are publicly filed—such as the FEC complaint at issue here—for the "limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015).

## ARGUMENT

This case is governed by Florida defamation law. Florida law defines defamation as "'the unprivileged publication of false statements which naturally and proximately result in injury to another.'" *Turner v. Wells*, 198 F. Supp. 3d 1355,

7

1364 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. Dist. Ct. App. 1973)). Defamation has five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner*, 879 F.3d at 1262 (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Statements of opinion are inherently not defamatory; in order to be actionable, a statement must "impl[y] the allegation of undisclosed defamatory facts as the basis for the opinion." *E. Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. Dist. Ct. App. 1983) (quoting Restatement (Second) of Torts § 566 (1977)).

## I.  COUNT ONE SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A DEFAMATION PER SE CLAIM.

Plaintiff alleges two statements made by Mr. Letsou were defamatory per se. Compl. ¶ 17. Specifically, Plaintiff alleges the words "record of fraud" in the Newspaper Statement and the words "illegal activity" in the Press Release's headline constitute defamation per se. Compl. ¶ 17.

Plaintiff's defamation per se claims fail as a matter of law. As a threshold matter, Plaintiff's claims relating to the Newspaper Statement are time-barred. Beyond that, Plaintiff—who concedes he is a public figure—pleads no facts sufficient to show actual malice. And in any event, the Newspaper Statement is pure

opinion and cannot form the basis of a defamation claim. Second, Plaintiff does not allege *any* facts establishing that Mr. Letsou himself published any of the Press Release Statements, other than the one attributed directly to him, which is pure opinion and not legally actionable. And once again, plaintiff—who concedes he is a public figure—fails to allege any facts remotely sufficient to give rise to a reasonable inference of actual malice. *Michel*, 816 F.3d at 702.

A.   **Plaintiff's Newspaper Statement Claim Fails as a Matter of Law.**

Plaintiff alleges that the words "record of fraud" published by *The Hill*, and then republished by *The Daily Caller*, constitute defamation per se. Compl. ¶ 17. That claim fails for three reasons. First, the claim is barred by the statute of limitations. Second, the Complaint is devoid of factual allegations sufficient to plead actual malice. Third, Mr. Letsou's statement was not defamatory in this context but rather a statement of protected opinion.

1.   **Plaintiff's Newspaper Statement Claim Is Barred by the Statute of Limitations.**

Under Florida law, the statute of limitations for a defamation suit is two years. See Fla. Stat. § 95.11(4)(g) (2012); *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114 (Fla. 1993). "The period begins to run from the time the cause of action accrues[.]" *Id*. at 115; accord Fla. Stat. § 95.031 (2012). And Florida law provides that a "cause of action for damages founded upon a single publication ... shall be deemed to have accrued at the time of

9

the first publication." Fla. Stat. § 770.07  (2012); *accord Wagner*, 629 So. 2d at 115

("A cause of action for defamation accrues on publication."). The Florida Supreme

Court has held that this two-year statute of limitations rule applies "to all civil

litigants, both public and private, in defamation actions." *Id*.

The face of Plaintiff's Complaint establishes that his Newspaper Statement

defamation per se claim is time barred. Plaintiff alleges the statement was published

by *The Hill* on September 18, 2023, and republished by *The Daily Caller* later that

same day. Compl. ¶¶ 8-9; *see also* Exs. B and C. A defamation cause of action

therefore began to accrue on that date. The instant lawsuit, however, was not filed

until January 22, 2026—months after the statute of limitations for defamation ran

out. See Fla. Stats. §§ 95.11(4)(g), 95.031; *Wagner*, 629 So.2d at 114–15.[2] Plaintiff's

defamation per se claim based on the Newspaper Statement is therefore barred as

out of time.

### 2.    Plaintiff Fails to Plausibly Allege Actual Malice.

Plaintiff concedes he is a public figure and must satisfy the First Amendment's

actual malice standard. Compl. ¶ 20. Under Supreme Court precedent, a defamation

claim "require[es] a public-figure plaintiff to establish actual malice by the

defendant by clear and convincing evidence." *Moore v. Cecil*, No. 23-13531, 2026

---

[2] Florida law does not recognize a discovery rule for defamation, *Wagner*, 629 So.2d at 114-15, and the Plaintiff has not pled any such facts.

10

WL 1109336, at *8 (11th Cir. Apr. 24, 2026); see also *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (at Florida law, public figures must plead actual malice in defamation per se suits). Here, Plaintiff's complaint is devoid of factual detail sufficient to plausibly allege actual malice.

At the outset, to show actual malice, a public figure plaintiff must clearly establish that the speaker "knew the alleged defamatory statement was in fact false; or … acted with reckless disregard of whether the statement was false or not." *Moore*, 2026 WL 1109336, at *10 (quoting *Michel*, 816 F.3d at 703); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021). A public figure alleging defamation can establish "reckless disregard" only where the speaker "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Moore*, 2026 WL 1109336, at *10; *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) (same).

This test is wholly "subjective." *Ibid.* The "beliefs or actions of a reasonable person are irrelevant." *Michel*, 816 F.3d at 702–03. Rather, the actual malice inquiry "focus[es] only on the defendant's actual state of mind," and a public figure alleging defamation "must show that the defendant *in fact* entertained serious doubts as to the truth of the statement." *Coral Ridge Ministries*, 6 F.4th at 1252 (citation omitted). Importantly, "[i]ll-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice." *Dunn v. Air Line Pilots*

11

*Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (citation omitted); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.").

In short, "the constitutional actual malice standard requires that the plaintiff establish by clear and convincing evidence the defendant's *actual state of mind* concerning the veracity of the alleged defamatory statement." *Moore*, 2026 WL 1109336, at \*10–11 (emphasis added). This means that a plaintiff must plausibly allege the speaker "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.*

Here, the Complaint alleges zero facts giving rise to a reasonable inference that Mr. Letsou made the allegedly defamatory Newspaper Statement knowing it was "in fact false" or "acted with reckless disregard of whether the statement was false or not." *Moore*, 2026 WL 1109336, at \*10. For starters, this Court "can disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants were reckless" or knew the statements were false. *Michel*, 816 F.3d at 703–04. This is true of the Complaint's allegation that the "Defendant made these statements with actual malice." Compl. ¶ 12. It is also true of the allegation that Mr. Letsou "knew the statements were false or acted with reckless disregard for their truth or falsity." *Ibid.* Such allegations "amount to little

12

more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" which are insufficient to support a cause of action. *Michel*, 816 F.3d at 703–04 (quoting *Iqbal*, 556 U.S. at 678). Indeed, the Complaint is utterly bereft of any factual allegation concerning Mr. Letsou's "actual state of mind," a fact which dooms every single one of Mr. Gross's defamation claims. *Moore*, 2026 WL 1109336, at \*10–11.

The closest the Complaint gets to alleging *any* fact regarding actual malice is its assertion that "[a]s a political professional with access to public records, [Mr. Letsou] either knew or should have known that there was no such record." Compl. ¶ 12. But that allegation fails twice over.

At the outset, the allegation that Mr. Letsou supposedly "knew" there was no record of fraud is a bare legal conclusion without factual support. And the Complaint fails to identify any specific public record of which Mr. Letsou "should have" been aware—much less that Mr. Letsou was in fact *subjectively* aware of such record. Further, Plaintiff's allegation that Mr. Letsou "should have known" about a supposedly nonexistent record of fraud sounds in negligence. But it is well-established that "a negligent error is not a basis for a finding of actual malice." *Moore*, 2026 WL 1109336, at \*15. Instead, a public figure alleging defamation "must show that the defendant *in fact* entertained serious doubts as to the truth of the statement." *Coral Ridge Ministries*, 6 F.4th at 1252 (citation omitted). To hold a

13

speaker liable for what he "should have known" would "eviscerate the First Amendment protections that the Supreme Court established in *New York Times* and its progeny." *Moore*, 2026 WL 1109336, at *14.

Further, "because the actual malice inquiry is subjective—that is, concerned with the defendant's state of mind when he acted—the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication." *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) (citing *Bose Corp. v. Consumers Union,* 466 U.S. 485, 498, 104 (1984)). Here, the Complaint identifies no such information that was available to—much less considered by—Mr. Letsou.

Plaintiff next asserts that "[t]he timing and context of the statements, during a heated U.S. Senate campaign, underscore the intent to cause political and reputational harm." Compl. ¶ 13. The opposite is true. Both the Supreme Court and the Eleventh Circuit have been clear that where, as here, "the alleged defamation is related to a political candidate for an elective office, the case 'presents what is probably the strongest possible case for application of the *New York Times* rule'"— that is, the rule that a public figure must show actual malice in order to prevail on a defamation claim. *Moore*, 2026 WL 1109336, at *10 (quoting *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 686–87 (1989)).

14

Plaintiff also complains that Mr. Letsou has never issued a retraction. Compl. ¶ 14. That fact is irrelevant. Since a defamation claim is based on what the speaker subjectively knew at the time he was speaking, a subsequent failure to retract or correct a statement does not bolster a defamation claim. *McFarlane*, 91 F.3d at 1515 ("[Plaintiff] presents no authority, however, nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication."). A speaker's later action (or inaction) "can hardly be taken as evidence that [a statement was made] with actual malice." *Id.*

Nor can Plaintiff rely on the notion that actual malice is apparent from the face of any of Mr. Letsou's statements. The Eleventh Circuit conclusively rejected just such an argument in *Moore v. Cecil*, No. 23-13531, 2026 WL 1109336, at *14 (11th Cir. Apr. 24, 2026). There, a political candidate argued that the speaker's intent could "be inferred from the ad itself." *Id.* The Eleventh Circuit dismissed that argument as contrary to the rule that "the actual malice standard is deliberately subjective." *Id.* To base a finding of actual malice on anything other than the speaker's subjective state of mind would allow the speaker to be held liable for negligent statements, rather than knowing or reckless ones, and thus "eviscerate" crucial First Amendment protections. *Id.*

15

### 3.    The "Record of Fraud" Language Is Not Defamatory in Context.

Wholly apart from the fact that Plaintiff's Newspaper Statement claim is both time-barred and insufficiently pled, "the context surrounding the statement" demonstrates that the Newspaper Statement was not actually defamatory, but a statement of pure opinion. *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002). Crucially, the Newspaper Statement does not "impl[y] the allegation of undisclosed defamatory facts," as is required for a defamation claim to lie. Restatement (Second) of Torts § 566 (1977). Rather, *the words of the Newspaper Statement itself contain all the relevant claims*: because of his history of "running businesses into the ground in Maryland," Mr. Gross has a "long record of failure," and because of his history of "running as a Democrat in Georgia," Mr. Gross has a "long record of . . . fraud." *See* Compl. ¶ 8–9.

This rhetoric made sense given the nature of the NRSC's allegations during the election: in the context of a primary election campaign, a member of an opposing political party masquerading as a Republican stood to defraud—that is, mislead—Republican primary voters, who tend to prefer candidates with a longstanding commitment to their party's core values. The Press Release Statements, which use very similar language to critique Mr. Gross's past partisan affiliations, corroborate this reading of Mr. Letsou's statement. *See* Compl. ¶ 6 ("Keith Gross's *latest scam is lying to Floridians by pretending he isn't an out-of-state Democrat*") (emphasis

16

added). Given this specific political context, which is obvious from the face of Plaintiff's own Complaint, the word "fraud" as used in the Newspaper Statement is far "too imprecise, undefinable, and non-actionable" to support a defamation claim. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 925 (M.D. Fla. 1996). The Newspaper Statement, as written, falls squarely in the realm of protected political opinion.

B.      **Plaintiff's Press Release Statement Claim Fails as a Matter of Law.**

Plaintiff alleges that the words "Illegal Activity" in the Press Release's headline—"NRSC Complaint Exposes More Illegal Activity From Florida Scam Artist"—constitute defamation per se. Compl. ¶ 17. That claim fails for three reasons. First, plaintiff pleads no facts sufficient to establish that Mr. Letsou bears any responsibility, whether direct or indirect, for the publication of this statement. Second, as with the Newspaper Statement, the Complaint is devoid of any factual detail relating to actual malice, much less the detail needed to "nudge[ ] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Third, Mr. Letsou's statement was not defamatory in context.

1.      **The Complaint Fails to Allege That the Majority of the Press Release Was Attributable to Mr. Letsou.**

Florida law is explicit: a plaintiff must show that the defendant actually published the allegedly defamatory statements at issue. "To recover in a defamation action, a plaintiff must show that *the defendant* published false and defamatory

17

statements concerning him, without reasonable care as to whether those statements were true or false, which resulted in actual damage to the plaintiff." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) (emphasis added). Despite this straightforward requirement, plaintiff simply alleges—without more— that Mr. Letsou "served as the Communications Director and official spokesperson for the National Republican Senatorial Committee at the time he published defamatory statements about Mr. Gross," Compl. ¶ 2. That is a far cry from pleading facts sufficient to show that Mr. Letsou had any oversight of the NRSC's *press releases in general* or of *this particular* press release. *See Mueller v. The Fla. Bar*, 390 So. 2d 449, 451 (Fla. Dist. Ct. App. 1980) ("well-pleaded allegations" in defamation case must include defendant's "authorship of the release" in question).

To be sure, the Press Release contains one statement that is directly attributable to Mr. Letsou, but that statement does nothing to establish that the Press Release in its entirety was published by Mr. Letsou. Ex. A. Quite the opposite: That the Press Release clearly identifies one statement, made personally by Mr. Letsou, suggests that the remainder of the release is not attributable to him. If Plaintiff believed himself injured by the *NRSC's* press release, the *NRSC* should have been named as a defendant. It was not. Accordingly, Plaintiff's defamation per se claim regarding the Press Release headline fails as a matter of law because the Complaint fails to allege facts showing the statement was attributable to Mr. Letsou.

18

### 2.    Plaintiff Fails to Plausibly Allege Actual Malice.

As with the Newspaper Statement, Plaintiff's claim relating to the Press Release Statements fails to allege actual malice. The Complaint's boilerplate allegations are legal conclusions; the "should have known" allegation does not state a claim for actual malice; and the political context of the statement means that the First Amendment's protections are at their zenith. *See supra* I.A.2.

Moreover, Plaintiff cannot meet the actual malice standard for his Press Release claim for an additional reason—the NRSC included "citations to the [FEC complaint] that it relied on" in the press release. *Moore*, 2026 WL 1109336, at *15. "Where a publisher gives readers sufficient information to weigh for themselves the likelihood of a statement's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Id.* (quoting *Michel*, 816 F.3d at 703) (cleaned up). The NRSC's inclusion of the FEC complaint on which it relied "not only allowed viewers to verify the [press release's] contents … but also further undermines [Plaintiff's] contention that the ad itself demonstrates actual malice." *Id.*

In sum, Plaintiff's defamation per se claim regarding the Press Release headline fails because he alleges no facts suggesting that Mr. Letsou "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Moore*, 2026 WL 1109336, at *10–11.

19

### 3. The "Illegal Activity" Language Is Not Defamatory in Context.

Even assuming that the "Illegal Activity" language can be attributed to Mr. Letsou, it was not defamatory in context. Under Florida law, "[p]ure opinion"—which cannot be defamatory—"occurs when the defendant makes a comment or opinion based on *facts which are set forth in the article* or which are otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981) (emphasis added). The NRSC press release in question set forth all the relevant facts: the NRSC had recently filed a complaint with the Federal Election Commission, which alleged that Plaintiff and his campaign committee had violated the Federal Election Campaign Act (FECA) by receiving impermissible in-kind contributions. Ex. A. The filing of such a complaint by a third party is expressly contemplated by federal law, *see* 52 U.S.C. § 30109, and inaugurates a lawful judicial procedure. Such a filing with the FEC is the condition precedent to the filing of a citizen suit to enforce FECA, if the Commission does not act. *Id.* And per 11 C.F.R. § 111.4(c), "All statements made in a complaint are subject to the statutes governing perjury and to 18 U.S.C. 1001," which makes it a federal crime to knowingly and willfully make materially false statements. That complaint—and Mr. Letsou's description of it—was based on a belief in its veracity.

This context demonstrates why the challenged headline statement—"NRSC Complaint Exposes More Illegal Activity From Florida Scam Artist"—is not defamatory as a matter of law. The headline simply states the NRSC's opinion that Mr. Gross's conduct, as described in the NRSC's FEC complaint, constitutes illegal activity. Indeed, the very filing of the underlying complaint is *predicated* on the fact that the NRSC holds this opinion.

Similarly, the headline's accompanying use of the words "scam artist" is also pure opinion, which as a matter of law cannot be defamatory. *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1296 (S.D. Fla. 2023). Florida law is clear that such statements are "non-literal assertions of fact and rhetorical hyperbole." *Id.* Indeed, in *Akai Custom Guns*, the court held that a statement alleging that a plaintiff was "perpetrating a scam" was a nonactionable opinion due to its lack of precision. *Id.*

Read as a whole, the Press Release headline's "combination of a substantially true description of a public document in a judicial proceeding and a single statement of non-actionable opinion simply is not defamatory, even when viewed in the light most favorable to the complainants." *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-CIV, 2017 WL 8751751, at *3 (S.D. Fla. Jan. 25, 2017), *clarified on denial of reconsideration sub nom. B&D Nutritional*

21

*Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-CIV, 2017 WL 8751740 (S.D. Fla. Mar. 17, 2017).

In sum, because Plaintiff has failed to plead that the bulk of the Press Release was attributable to Mr. Letsou, because Plaintiff has not plausibly alleged actual malice, and because the headline was not, in context, defamatory, this Court should dismiss Plaintiff's defamation per se claim relating to the Press Release Statement.

## II.    COUNT TWO SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A DEFAMATION CLAIM.

Plaintiff does not single out any particular statements as defamatory in Count II. That Count merely incorporates the Complaint's factual allegations. Read in the light most favorable to Plaintiff, the Complaint appears to allege that the Newspaper Statement and a handful of Press Release Statements constitute defamation under Florida law. Compl. ¶ 22–23. Although the statements are not clearly identified in the Complaint, they seem to include the following:

- "Whether he's running as a Democrat in Georgia or running businesses into the ground in Maryland, Keith Gross has a long record of failure and fraud. Rick Scott is going to crush him," *see* Compl. ¶ 8–9;

- "NRSC Complaint Exposes More Illegal Activity From Florida Scam Artist" (press release headline), *see* Compl. ¶ 5;

22

- "Keith Gross's latest scam is lying to Floridians by pretending he isn't an out-of-state Democrat who has failed at everything else he's tried in life" (quote from defendant Mr. Letsou), *see* Compl. ¶ 6;

- Plaintiff has "a long history of failure and lawbreaking," *see* Compl. ¶ 7;

- Plaintiff is "illegally coordinating with an outside group," *see* Compl. ¶ 7;

- Plaintiff was "kicked off the ballot in Georgia," *see* Compl. ¶ 7; and

- Plaintiff had previously "run a small business into the ground," *see* Compl. ¶ 7.

For many of the same reasons as his defamation per se claim, Plaintiff's defamation claim fails as a matter of law. First, any claim related to the Newspaper Statement is time barred. Second, Plaintiff fails to allege actual malice. Third, Plaintiff fails to plead *any* facts sufficient to establish that *any* of the Press Release Statements, other than the single quote directly attributed to Mr. Letsou, were actually published by Mr. Letsou. Fourth, the statements in context all sound in opinion; they are not actionable statements of fact.

### A.  Plaintiff's Newspaper Statement Claim Is Barred by the Statute of Limitations.

To the extent Plaintiff's defamation claim incorporates the Newspaper Statement, it is untimely. Florida law provides that the two-year statute of limitations applicable to defamation actions accrues and begins to run on the date of publication.

23

*See supra* I.A.1. Here, the Complaint alleges that the Newspaper Statement was published in September 2023, but Plaintiff did not file suit until January 2026. *Id.* Because Plaintiff waited more than two years to file suit, all his defamation claims based on the Newspaper Statement fail as a matter of law. Plaintiff's suit ends there.

**B.      Plaintiff Fails to Plausibly Allege Actual Malice.**

For all the reasons mentioned above, Plaintiff fails to allege any facts capable of giving rise to an inference of actual malice. Almost all the Complaint's allegations involving malice are boilerplate conclusions of law. *See* Compl. ¶ 20 ("[D]efamation law permits public figures to recover damages for false statements made with actual malice. Plaintiff meets and exceeds that threshold."); Compl. ¶ 12 ("Defendant made these statements with actual malice."); *id.* ("He knew the statements were false or acted with reckless disregard for their truth or falsity."); Compl ¶ 24 ("Defendant acted with actual malice in making and disseminating these statements, which directly suggested criminal conduct on behalf of Plaintiff.").

As explained above, to the extent Plaintiff suggests that Mr. Letsou "knew the statements were false"—he provides zero factual detail. *Supra* I.A.2. And to the extent Plaintiff alleges that Mr. Letsou "should have known" no record of fraud existed, that allegation sounds impermissibly in negligence. *Supra* I.A.2. Such a standard would "eviscerate" First Amendment protections in the political context where they are at their zenith. *Moore*, 2026 WL 1109336, at *14; *contra* Compl. ¶

24

12 (suggesting that the political context supports a finding of actual malice). Rather, under Florida law, a public figure alleging defamation "must show that the defendant *in fact* entertained serious doubts as to the truth of the statement." *Coral Ridge Ministries*, 6 F.4th at 1252 (citation omitted).

With respect to his claims for defamation (but not defamation per se), Plaintiff asserts that the "purposeful avoidance of the truth also satisfies the actual malice standard." Compl. ¶24 (citing *Harte-Hanks Communications, Inc.*, 491 U.S. 657). It is true that the Supreme Court has held that the purposeful avoidance of the truth can sometimes lead to an inference of actual malice. But here the Complaint fails to allege that Mr. Letsou purposefully avoided the truth, much less provide any factual detail. The Complaint alleges only that Mr. Letsou "failed to verify his accusations, despite access to verifiable public records." Compl. ¶ 24. Once again, this allegation references what Mr. Letsou *should have done* rather than his subjective state of mind. *Supra* I.A.2. It fails as a matter of law because an allegation of negligence does not plead actual malice.

*Harte-Hanks Communications* is not to the contrary. That case turned upon the speaker's "*deliberate decision* not to acquire knowledge of facts that might confirm the probable falsity of [the] charges." *Id.* at 692 (emphasis added). There, the defendant already had reason to doubt the veracity of a source and yet failed to take the time to listen to two available audiotapes and made no effort to interview a

25

known key witness. *Id.* Those facts allowed the Court to conclude that the defendant had purposefully avoided learning the truth. Nothing similar exists here.

Indeed, as the Eleventh Circuit has observed, to succeed on a purposeful-avoidance-of-the-truth claim, "the plaintiff must plead facts giving rise to a reasonable inference that the defendants acted to intentionally avoid learning the truth." *Michel*, 816 F.3d at 704. Yet the Complaint here fails to allege facts: (1) suggesting that Mr. Letsou had reason to doubt the veracity of any of his statements; (2) identifying any specific information that would have confirmed the falsity of such statements; or (3) indicating that Mr. Letsou made a "deliberate decision" to avoid such information. *Harte–Hanks Commc'ns.,* 491 U.S. at 692.

To the extent Plaintiff's defamation claim can be read to allege a duty to investigate—*i.e.*, a failure "to verify," Compl. ¶ 24—it is well established that a failure to investigate "does not indicate the presence of actual malice." *Harte–Hanks Commc'ns*, 491 U.S. at 692; *id.* at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."). To hold that a speaker has a duty to investigate would fail to focus on the speaker's state of mind and impermissibly impose an objective standard of care. *McFarlane*, 91 F.3d at 1509. And as the Supreme Court has emphasized, applying "the standard of ordinary care" would fail to "protect against self-censorship." *St. Amant*, 390 U.S. 731–32.

26

C.    **Plaintiff's Press Release Statement Claims Fail on Additional Grounds.**

In addition to failing to plead actual malice as explained above, the Press Release Statements fail to state a claim for defamation for two additional and independent reasons. For starters, the Complaint fails to adequately plead any facts showing that Mr. Letsou published any of the unattributed Press Release Statements. *Supra* I.B.1. A defendant cannot be held liable for statements he did not make.

Further, the only Press Release Statement clearly attributable to Mr. Letsou— Mr. Letsou's statement that "Keith Gross's latest scam is lying to Floridians by pretending he isn't an out-of-state Democrat who has failed at everything else he's tried in life" is quintessential opinion commentary. *See Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1273 (S.D. Fla. 2023), *aff'd*, No. 23-14044, 2025 WL 3213203 (11th Cir. Nov. 18, 2025). Taking the elements of this statement one by one: the comments that Mr. Gross is engaged in a "latest scam," that he is "lying to Floridians," that he is an "out-of-state Democrat" and that he has "failed at everything else he's tried in life" are all comments that are "not readily capable of being proven false in part due to their non-literal nature," and so cannot be defamatory. *Akai Custom Guns*, 707 F. Supp. 3d at 1297; *see also Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50, 52 (Fla. Dist. Ct. App. 1976) (characterization of public official's tenure as "unsuccessful," accompanied by accusations of unfitness stemming from official's purported "ineptness,

27

incompetence and indecisiveness," were "clearly matters of opinion, not statements of fact" and therefore could not support defamation claim). As a matter of law, "merely tossing insults … is not defamation." *Logue v. Book*, 297 So. 3d 605, 614 (Fla. Dist. Ct. App. 2020). In point of fact, Mr. Gross made materially identical statements about his political opponent during the same primary campaign—publicly accusing him of being a "fraud" and "ineffective crook," and "l[ying] his entire life." Ex. B.

Mr. Letsou's comments, marshaled in the context of a political campaign, clearly constitute "non-actionable expressions of pure opinion and/or rhetorical hyperbole." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). As such, this single sentence cannot colorably form the basis of a defamation suit.

## III.    THE COURT SHOULD AWARD FEES TO DEFENDANT PURSUANT TO FLORIDA'S ANTI-SLAPP STATUTE.

Mr. Gross has filed this lawsuit for one reason alone: to harass Mr. Letsou, in retaliation for Mr. Letsou's work at the NRSC supporting Mr. Gross's (successful) political rival. Mr. Gross's legal claims are stale, and most are time-barred. Further, Mr. Letsou is no longer employed at this political committee, and the 2024 Florida Senate primary election is long since concluded. Those deficiencies point to the intended endgame of this legal action: chilling any future political criticisms of Mr. Gross, including discussion of past business failures or Democratic Party affiliation, as he runs for office in 2026.

28

Florida passed an anti-SLAPP law to "make it easier and cheaper to terminate such lawsuits at early stages." Samuel Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 17–18 (Nov. 2016).[3] The Florida anti-SLAPP statute—codified at Fla. Stat. § 768.295 (2015)— protects free speech by prohibiting plaintiffs from bringing lawsuits that are "without merit" because a defendant has exercised his right of free speech in connection with public issues. Fla. Stat. § 768.295(3) (2015).

"Free speech in connection with public issues" is statutorily defined as "any written or oral statement that is protected under applicable law and is . . . made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." Fla. Stat. § 768.295(2)(a) (2015). Both elements of this definition are satisfied here. First, Mr. Letsou's statements were protected under applicable law. This suit hinges on a press release, and accompanying advocacy comments to the news media, made in connection with a political campaign—all of which constitute "core political speech" entitled to the highest level of protection conferred by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995); *see also*

---

[3] Florida courts have often held that the fee-shifting provision of Florida's anti-SLAPP law apply where federal courts are sitting in diversity jurisdiction and applying Florida substantive law. *See, e.g.*, *Reed v. Chamblee*, No. 3:22-CV-1059-TJC-PDB, 2023 WL 6292578, at *26 (M.D. Fla. Sept. 27, 2023) (collecting cases).

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191–92 (2014) (internal quotation marks omitted) ("the First Amendment has its fullest and most urgent application precisely to the conduct of campaigns for political office"). Second, press releases and media comments are clearly "similar" to the types of expressive media enumerated in the statute. Mr. Letsou's statements therefore fall within the statutory definition of free speech in connection with public issues.

As previously explained at length, all of Plaintiff's claims lack legal merit. The Newspaper Statement is time-barred. The Complaint fails to allege that all but one of the Press Release Statements were in fact published by Mr. Letsou. The remaining Press Release Statement attributable to Mr. Letsou is pure opinion, which falls squarely within the First Amendment's protections. And across the board, Plaintiff has failed to plead *any* facts sufficient to establish that Mr. Letsou's statements were made with actual malice.

Because Plaintiff's suit is the epitome of the kind of action that Florida passed its anti-SLAPP law to penalize—a naked effort to punish Mr. Letsou for core political speech in the context of a political campaign—Mr. Letsou is entitled to an award of fees and costs.

## CONCLUSION

The Court should dismiss with prejudice.

30

Respectfully submitted,

/s/ Erin Morrow Hawley
Erin Morrow Hawley
District of Columbia Bar No. 500782
*Pro hac vice*
Jessica Furst Johnson
Florida Bar No. 43929
Ryan G. Dollar
District of Columbia Bar No. 166681
*Pro hac vice*
John S. Ehrett
District of Columbia Bar No. 1657026
*Pro hac vice*
LEX POLITICA PLLC
700 Pennsylvania Avenue SE, Ste 440
Washington, D.C. 20003
(512) 354-1783
ehawley@lexpolitica.com
jessica@lexpolitica.com
ryan@lexpolitica.com
jehrett@lexpolitica.com

Dated: May 7, 2026                    *Counsel for Defendant Philip Letsou*

31

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the length limitations of Local Rule 7.1(F) because it contains 7,971 words, excluding the parts that are exempted. It complies with the type-style requirements of Local Rule 5.1(C) because it is printed in 14-point Times New Roman font.

Dated: May 7, 2026                                    /s/ Erin Morrow Hawley
                                                       Erin Morrow Hawley

32