# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**KEITH GROSS**,
Plaintiff,                              **Civil Action No. 5:26-CV-00021-MW-MJF**


v.

**PHILIP LETSOU**,
Defendant.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff respectfully opposes Defendant's Motion to Dismiss.

## INTRODUCTION

In an era when political statements are instantly disseminated across the internet and treated as authoritative by voters, journalists, and the public at large, the words of an official spokesperson for the National Republican Senatorial Committee carry significant weight and credibility. Publishing deliberate falsehoods is not protected speech under the First Amendment. Seeking to dismiss malicious and untrue statements merely because they were issued in the heat of a political contest would only compound the problem. The public deserves transparency and truth in our electoral process and in government. That cannot occur when lies are perpetuated and accepted as reasonable

1

behavior simply because "it's politics." Intentionally misleading false statements like those at issue here are especially harmful in the political context because they can lead voters to make decisions based on inaccurate information.

The purpose of this lawsuit is to clear up false allegations that continue to damage Plaintiff's reputation and campaign. The suit was filed only after Defendant repeatedly and steadfastly refused to issue a simple retraction for statements he knows are false and malicious. If Defendant were interested in the truth, he would have issued a retraction rather than filing a 38-page motion to dismiss styled like an appellate brief. Statements issued by individuals holding official-looking titles in Washington, D.C., should—at minimum—contain a kernel of truth. In this instance, there was not even a kernel of truth; the statements were pure fabrications designed to mislead voters and the public.

The Complaint states plausible claims for defamation *per se* (Count I) and defamation (Count II). Defendant's arguments mischaracterize the Complaint, ignore plausible inferences at the pleading stage, and

misapply the law. The motion should be denied in full. Florida's anti-SLAPP statute does not apply and does warrant fees here.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). Although actual malice must be pled with plausibility, the standard does not require "clear and convincing" evidence at the motion-to-dismiss stage. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

## ARGUMENT

### I. Count One States a Claim for Defamation *Per Se*.

Plaintiff has stated a plausible claim for defamation *per se* based on two statements: (1) the "record of fraud" language in the Newspaper Statement (Compl. ¶¶ 8–9), and (2) the "illegal activity" language in the Press Release headline and body (Compl. ¶¶ 5–7). Under Florida law, a statement is defamatory *per se* if it (1) imputes the commission of a crime, (2) imputes a lack of integrity or prejudice in the conduct of one's

3

trade, business, or profession, or (4) subjects the plaintiff to hatred, contempt, or ridicule. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105 (Fla. 2008); *E. Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 926 (Fla. Dist. Ct. App. 1983); *see also* Restatement (Second) of Torts § 566 (1977). Both statements at issue fall squarely within these categories by accusing Plaintiff of fraudulent and illegal conduct in his business dealings and political campaign.

Florida defamation claims require proof of five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official [i.e., actual malice], … (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). For statements that are defamatory *per se*, damages are presumed. The Complaint plausibly alleges each element.

## A. Plaintiff's Newspaper Statement Claim Is Not Barred by the Statute of Limitations (or, Alternatively, the Bar Is Not Apparent on the Face of the Complaint).

Defendant argues that Plaintiff's claims relating to the Newspaper Statement are barred by the two-year statute of limitations,

Fla. Stat. § 95.11(4)(g), and the single-publication rule, Fla. Stat. § 770.07. This argument fails at the pleading stage. Dismissal under Rule 12(b)(6) on statute-of-limitations grounds is appropriate only when the complaint itself conclusively establishes the bar. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Complaint does not do so. It alleges facts supporting timeliness, including the timing of any republication or continued dissemination of the defamatory statements and the accrual of Plaintiff's claims. *See* Compl. ¶¶ 8–9. Accordingly, the Newspaper Statement claim survives.

Moreover, Florida's single publication rule, while applicable to internet publications, *Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332 (Fla. Dist. Ct. App. 2022), does not automatically bar claims when factual questions remain about republication or the defendant's responsibility for renewed dissemination. The single publication rule is designed to prevent multiplicity of lawsuits following mass dissemination, but it turns on whether a separate and distinct decision to republish was made. Without factual development, the Court cannot conclude that the single publication rule bars these claims as a matter of law.

5

While the Complaint alleges that The Hill published the statement on September 18, 2023, it also alleges that the statement was republished by The Daily Caller on the same day and that the defamatory allegations "remain accessible and damaging." The determination of what constitutes a separate publication for statute of limitations purposes often requires factual development regarding whether a separate decision to republish was made, whether modifications occurred, and whether the defendant was responsible for continued dissemination. These are factual questions unsuitable for resolution on a motion to dismiss.

The strongest basis for denying Defendant's motion is that Plaintiff's claims based on the January 22, 2024 NRSC press release are unquestionably timely. Under Florida law, defamation actions must be brought within two years of publication. Fla. Stat. § 95.11. The Florida Supreme Court has held that a cause of action for defamation accrues on publication. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113 (Fla. 1993). The press release was published on January 22, 2024, and Plaintiff filed suit on January 22, 2026, precisely two years later. These claims fall squarely within

the statutory window and cannot be dismissed on statute of limitations grounds.

The press release publication contains independently actionable defamatory statements. The headline accuses Plaintiff of "Illegal Activity" and labels him a "Scam Artist." The body text accuses Plaintiff of "a long history of failure and law-breaking" and "illegally coordinating with an outside group." The quote attributed to Defendant accuses Plaintiff of running "a scam" and "lying to Floridians." Each of these statements, standing alone or in combination, provides a complete basis for Plaintiff's defamation claims under Florida law.

Even if the Court were to find the September 2023 newspaper statement time-barred, the timely press release claims would survive and proceed to the next stage of litigation. Dismissal of the entire Complaint would therefore be inappropriate. At most, the Court could limit damages or claims tied specifically to the newspaper statement while allowing the press release claims to proceed.

**B. Plaintiff Plausibly Alleges Actual Malice and Purposeful Avoidance with Concrete Facts.**

As a public figure, Plaintiff must (and does) plead actual malice—that Defendant published the statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Actual malice is a subjective standard that may be inferred from circumstantial evidence, including the defendant's purposeful avoidance of the truth or failure to investigate readily available contradictory facts. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1253 (11th Cir. 2021).

Defendant relies on *Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016), and *Moore v. Cecil*, No. 23-13531, 2026 WL 1109336 (11th Cir. Apr. 24, 2026). Those cases are distinguishable. *Michel* held only that "threadbare recitals" or purely conclusory allegations of "knew or should have known" are insufficient. *Moore* applied the same plausibility standard to a set of allegations the court found lacking in specific factual support.

8

At the pleading stage, however, Plaintiff need not prove actual malice by clear and convincing evidence. Rather, Plaintiff must allege facts sufficient to give rise to a reasonable inference of actual malice under the plausibility standard. *Id.* The Eleventh Circuit has made clear that threadbare recitals or purely conclusory allegations are insufficient, but the standard does not require clear and convincing evidence at the motion-to-dismiss stage. *Id.*

Here, the Complaint goes well beyond conclusory assertions. It alleges concrete, non-conclusory facts giving rise to a reasonable inference of actual malice:

(1) Defendant's position as NRSC spokesperson and Communications Director gave him direct access to campaign finance records, the FEC complaint, and Plaintiff's public business and political history;
(2) Defendant nevertheless published statements he knew were false or acted with reckless disregard by failing to conduct any reasonable investigation despite readily available exculpatory information;
(3) the timing and context of the statements during a heated primary campaign demonstrate motive to maximize harm; and
(4) additional circumstantial evidence of purposeful avoidance of the truth. *See* Compl. ¶¶ 5–17.

Additionally, actual malice may be inferred from circumstantial evidence, including the defendant's access to contradictory information, failure to investigate readily available facts, purposeful avoidance of the

truth, timing and context of statements, and refusal to retract after being confronted with evidence of falsity. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 109 S. Ct. 2678 (1989), *Don King Prods. v. Walt Disney Co.*, 40 So. 3d 40 (Fla. Dist. Ct. App. 2010).

Moreover, the Eleventh Circuit in *Michel* recognized a limited set of circumstances in which actual malice might arise from a failure to investigate: when the publication was fabricated, wholly imaginary, based on an unverified anonymous phone call, inherently improbable, or obviously worthy of doubt. *Readon v. WPLG, LLC*, 317 So. 3d 1229 (Fla. Dist. Ct. App. 2021). Here, accusations that a political candidate has a criminal record of fraud and illegal activity are obviously worthy of verification before publication, particularly when made by a senior communications professional with institutional access to records that would confirm or refute the accusations.

Taken as true and drawing all reasonable inferences in Plaintiff's favor, these allegations satisfy the Eleventh Circuit's plausibility standard for actual malice at the pleading stage.

With regards to Defendant's contention that Plaintiff has not plead sufficient facts to support showing actual malice, the Complaint contains multiple concrete, non-conclusory factual allegations that, taken together and construed in Plaintiff's favor, support a plausible inference of actual malice:

1) Defendant's Senior Communications Role and Institutional Access;
2) The Specific Nature of the Criminal Allegations;
3) Readily Available Contradictory Information;
4) The Campaign Context and Motive; and
5) Refusal to Retract After Notice

The Complaint alleges that:

First, Defendant held the position of NRSC Communications Director and official spokesperson. This senior role establishes that Defendant was a sophisticated political communications professional with institutional access to campaign finance records, FEC filings, and publicly available information about Plaintiff's background. A person in such a position would be expected to have access to, and familiarity with, the types of records necessary to verify serious accusations of criminal conduct before disseminating them as official party messaging.

Second, Defendant disseminated accusations that Plaintiff had a "record of fraud," engaged in "illegal activity," was "law-breaking," and "illegally coordinating." These are not vague political criticisms but specific accusations of criminal conduct. Accusations of this gravity that impute criminal behavior on the plaintiff are precisely the type of statements that a sophisticated communications professional would recognize as requiring verification before publication. The specificity and criminal nature of these allegations distinguish this case from situations involving general political commentary.

Third, the accusations were categorically false and readily verifiable through public records. Plaintiff has never been convicted of, charged with, or implicated in any fraudulent or illegal conduct. This allegation is significant because it suggests that Defendant, in his senior role with institutional access, either knew the accusations were false or acted with reckless disregard by failing to consult readily available information that would have revealed their falsity. The availability of contradictory public records supports an inference that Defendant's failure to verify was not innocent negligence but a conscious choice to avoid discovering the truth.

12

Fourth, the statements were made during a heated primary campaign and were designed to cause maximum political and reputational harm. While political context heightens First Amendment protections, it also provides circumstantial evidence of motive when combined with other factors. *Don King Prods. v. Walt Disney Co.*, 40 So. 3d 40 (Fla. Dist. Ct. App. 2010). The timing and context support an inference that Defendant was motivated by political considerations rather than a good-faith belief in the accuracy of his accusations.

Finally, that Defendant refused to retract the accusations after multiple demands for correction. This refusal is probative of actual malice because it suggests that Defendant either knew the statements were false or harbored serious doubts about their truth. A person who genuinely believed in the truth of an accusation would typically be willing to stand by it or, if presented with contradictory evidence, would investigate further. The refusal to retract after notice supports an inference that Defendant was aware of the falsity or entertained serious doubts.

Moreover, Defendant contends that Plaintiff alleges only negligent failure to investigate, which is insufficient to establish actual malice. This characterization misreads the Complaint. While failure to investigate standing alone does not indicate actual malice, *Lam v. Univision Communs.*, Inc., 329 So. 3d 190 (Fla. Dist. Ct. App. 2021), *Readon v. WPLG, LLC*, there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth.

Plaintiff's allegations go beyond mere failure to investigate. The Complaint alleges that Defendant, as a senior communications professional, had access to records that would have verified or contradicted the accusations. The allegations establish that the accusations were of a type-specific charges of criminal conduct-that a sophisticated professional would recognize as requiring verification. The allegations also establish that the accusations were made in a heated campaign context and were accompanied by an FEC complaint used as political messaging. These facts, taken together, support an inference that Defendant made a conscious choice to broadcast serious accusations without verification, knowing that contradictory

14

information was readily available and that the accusations were of a type requiring verification.

This is distinguishable from a situation where a defendant simply failed to investigate due to negligence or lack of diligence. Here, the institutional role, the access to information, the nature of the accusations, and the campaign context all support an inference that Defendant's failure to verify was a deliberate choice rather than innocent oversight. The Complaint alleges purposeful avoidance of readily available truth, not mere negligent failure to investigate.

## C. The "Record of Fraud," "Illegal Activity," and "Scam Artist" Language Is Defamatory *Per Se* in Context.

*"Record of Fraud"*

Defendant contends that the "record of fraud" language is non-actionable opinion or rhetorical hyperbole. The Complaint demonstrates otherwise. Read in full context, the statement implies the existence of specific, undisclosed (or misrepresented) facts of criminal or professional misconduct rather than merely expressing an opinion based on fully disclosed facts. *See* Restatement (Second) of Torts § 566; *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52 (Fla. Dist. Ct. App.

15

1981). The surrounding disclosed facts do not immunize the accusation; they amplify its harm. The statement is therefore actionable as defamation *per se*.

Florida law draws a critical distinction between pure expressions of opinion, which are constitutionally protected, and mixed expressions of opinion, which are not. *McQueen v. Baskin*, 377 So. 3d 170 (Fla. Dist. Ct. App. 2023), *Scott v. Busch*, 907 So. 2d 662 (Fla. Dist. Ct. App. 2005). Pure opinion is based upon facts that the communicator sets forth in a publication or that are otherwise known or available to the reader or listener as a member of the public. *Morse v. Ripken*, 707 So. 2d 921 (Fla. Dist. Ct. App. 1998), *See* also *From v. Tallahassee Democrat*.

Mixed opinion, by contrast, is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. *Morse v. Ripken, See* also *Fla. Med. Ctr., Inc. v. N.Y. Post Co.*, 568 So. 2d 454 (Fla. Dist. Ct. App. 1990). In mixed opinion, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm the opinion. *Morse v. Ripken*.

16

Whether a published statement is a protected expression of pure opinion versus an actionable expression of fact or mixed opinion poses a question of law. *McQueen v. Baskin* at 170. To determine whether a statement is actionable, the court must examine it in the context in which it was published, considering all the words used, not merely a particular phrase or sentence, and giving weight to cautionary terms used by the person publishing the statement. *Morse v. Ripken*, at 921, *From v. Tallahassee Democrat*, at 400. The court must also consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published. *Id.*

The statement that Plaintiff has a "record of fraud" is not protected pure opinion but an actionable assertion implying undisclosed defamatory facts. An accusation that a candidate has a "record of fraud" conveys, in ordinary understanding, a history of fraudulent conduct-not merely political criticism or subjective evaluation. This statement does not rest upon disclosed facts known to the audience; instead, it implies undisclosed facts supporting the charge of fraud. *Id.*

17

The statement is not accompanied by specific instances of fraud or the factual basis for such a characterization. The press release and newspaper statement do not disclose what fraudulent acts Plaintiff allegedly committed, when they occurred, or what evidence supports the accusation. Rather, the statement asserts the conclusion of fraud itself without providing the underlying facts. This is the hallmark of mixed opinion, the communicator implies that concealed or undisclosed facts would confirm the accusation. *Id.*

Moreover, the accusation is verifiable. Plaintiff either has a criminal record of fraud or does not. Fraud is a specific legal term with defined elements. The statement is not too imprecise or indefinable to be actionable; rather, it is a specific accusation that can be proven true or false through examination of public records. The fact that no such record exists demonstrates the statement's falsity.

Defendant may argue that the word "fraud" in this context refers to misleading Republican primary voters about party affiliation. However, this stretched interpretation is not supported by the plain language of the statement. If Defendant intended merely to criticize

Plaintiff's party affiliation, he could have used language such as "switched parties" or "changed his political affiliation." Instead, he used the word "fraud," which in ordinary understanding implies criminal conduct or intentional deception for unlawful gain. The statement must be read in its ordinary meaning, not according to a post-hoc interpretation designed to avoid liability.

*"Illegal Activity"*

The press release headline, "NRSC Complaint Exposes More Illegal Activity From Florida Scam Artist[,]" goes beyond describing the filing of an FEC complaint and affirmatively asserts that Plaintiff engaged in illegal activity. The statement does not say "NRSC Files Complaint Alleging Illegal Activity" or "NRSC Claims Illegal Activity"; rather, it states that the complaint "exposes" illegal activity, suggesting revelation of actual illegal conduct as established fact.

While the NRSC's filing of a complaint is a disclosed fact, the statement goes beyond describing the complaint and asserts the truth of the complaint's allegations. The word "exposes" implies that the illegal activity is a fact that has been revealed, not merely an allegation that

has been made. This is distinguishable from a neutral description of the complaint's contents.

Moreover, the statement implies undisclosed facts of actual illegal conduct. The press release does not set forth the specific factual basis for the accusation of illegal activity. It does not explain what laws Plaintiff allegedly violated, what conduct constituted the violations, or what evidence supports the allegations. Rather, it asserts the conclusion of illegality without disclosing the underlying facts. This constitutes mixed opinion or an actionable assertion of fact. *Scott v. Busch* at 662, *Barnes v. Horan*, 841 So. 2d 472 (Fla. Dist. Ct. App. 2002).

The accusation is also verifiable. Plaintiff either violated campaign finance laws or did not. The statement is not mere rhetorical hyperbole but a specific accusation of criminal or regulatory violations that can be proven true or false. In fact, the FEC dismissed the complaint, taking no action against Mr. Gross and made no finding of wrongdoing.

*"Scam Artist"*

Defendant may argue that terms such as "scam artist," "scam," and "lying" are loose epithets or hyperbole protected by the First Amendment. However, when these terms are paired with specific accusations of "illegal activity," "law-breaking," and "illegally coordinating," they are not mere loose epithets but part of an integrated accusation of criminality and unethical conduct.

The court must construe the statements in their totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. *From v. Tallahassee Democrat* at 400, *Smith v. Taylor Cty. Pub. Co.*, 443 So. 2d 1042 (Fla. Dist. Ct. App. 1983). When examined holistically, the statements communicate a factual assertion of criminal wrongdoing, not protected opinion. The press release does not merely express disagreement with Plaintiff's policies or character; it asserts specific unlawful conduct.

Moreover, the context matters significantly. The statements are made in an official capacity through a press release, not in casual conversation or clearly hyperbolic political rhetoric. The specificity of the accusations, illegal coordination, campaign finance violations, fraud,

21

and their criminal nature distinguish them from protected hyperbole. Political figures can pursue defamation actions provided they prove actual malice. *Logue v. Book*, 297 So. 3d 605 (Fla. Dist. Ct. App. 2020). While merely tossing insults is not defamation, specific accusations of criminal conduct are actionable when false and made with actual malice. *Id*.

Critically, the statements do not disclose the factual basis for the accusations. The press release does not set forth specific instances of fraud, illegal coordination, or campaign finance violations. Instead, it asserts these conclusions without providing the underlying facts. This absence of disclosed facts is a hallmark of mixed opinion and renders the statements actionable. *Scott v. Busch* at 907, *Barnes v. Horan* at 841.

Under Florida law, for an opinion to be pure and thus protected, the facts upon which the opinion is based must be stated and disclosed or known to the audience to whom the publication is made. *From v. Tallahassee Democrat*, 400 So. 2d 52 (Fla. Dist. Ct. App. 1981), *Smith v. Taylor Cty. Pub. Co.*, 443 So. 2d 1042 (Fla. Dist. Ct. App. 1983). The

challenged statements fail this requirement. They imply the existence of undisclosed defamatory facts without disclosing those facts to the audience. A finding of pure opinion usually occurs where the facts upon which the speaker relies are presented along with the commentary. *Sullivan v. Barrett*, 510 So. 2d 982 (Fla. Dist. Ct. App. 1987). Here, no such facts are presented.

The statements are distinguishable from cases where courts have found pure opinion based on fully disclosed facts. *Lrx, Inc. v. Horizon Assocs. Joint Venture*, 842 So. 2d 881 (Fla. Dist. Ct. App. 2003), *Sullivan v. Barrett*, 510 So. 2d 982 (Fla. Dist. Ct. App. 1987). Here, the underlying facts are not accurately disclosed; rather, the statements constitute material assertions of criminal conduct without factual support.

## D. Plaintiff's Press Release Statement Claim Is Also Plausible.

1. **Attribution.** As the official NRSC spokesperson who provided the quote and whose office issued the release, Defendant is responsible for its contents. *See* Compl. ¶¶ 5–7; *Mueller v. The Fla. Bar*, 390 So. 2d 449 (Fla. Dist. Ct. App. 1980).
2. **Actual Malice.** The same detailed factual allegations discussed above establish plausible actual malice for the Press Release statements.
3. **"Illegal Activity" Language Is Defamatory *Per Se* in Context.** The headline and surrounding statements accuse

Plaintiff of *actual* illegal campaign-finance violations and being a "scam artist." These are not protected rhetorical hyperbole or pure opinion. *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273 (S.D. Fla. 2023); *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 2017 WL 8751751 (S.D. Fla. Jan. 25, 2017).

## II. Count Two States a Claim for Defamation.

The same analysis defeats dismissal of Count Two. Plaintiff identifies seven additional statements from the Newspaper Statement and Press Release that are actionable as ordinary defamation. Compl. ¶¶ 5–9. These statements satisfy all five elements of a Florida defamation claim set forth in *Turner v. Wells*, 879 F.3d at 1262. Publication and falsity are expressly alleged. The statements are defamatory because they impute criminal or fraudulent conduct and damage Plaintiff's reputation in his business and political endeavors. Damages are pleaded.

Actual malice is plausibly alleged for the reasons detailed in Section I.B above. The additional Press Release statements—"scam," "lying," "lawbreaking," "illegally coordinating," and similar accusations—are not mere protected opinion or rhetorical hyperbole when read in full context. They imply specific false facts of criminal wrongdoing and are therefore actionable. *See Michel*, 816 F.3d at 695–

24

96 (distinguished); *Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002) (distinguished); *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50 (Fla. Dist. Ct. App. 1976).

### III. Because Complaint's claims have merit Florida's Anti-SLAPP Statute does not apply.

Defendant's request for fees and costs under Florida's anti-SLAPP statute, Fla. Stat. § 768.295, fails for multiple independent reasons. First, the statute authorizes an award of fees only when a claim is shown to be "without merit" *and* brought "primarily" to chill the valid exercise of the defendant's constitutional right of free speech in connection with a public issue. *See* Fla. Stat. § 768.295(3)–(4); *Logue v. Book*, 297 So. 3d 605, 615 (Fla. Dist. Ct. App. 2020); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). As demonstrated in Sections I and II above, Plaintiff's claims are meritorious and easily satisfy the pleading standards of Rule 12(b)(6). The Complaint alleges specific false statements of fact, publication, actual malice, and reputational harm—all supported by detailed factual allegations drawn from the very exhibits Defendant attaches to his

motion. Because the claims have merit, the anti-SLAPP statute simply does not apply.

Second, and equally fatal to Defendant's fee request, this lawsuit was *not* filed to chill protected speech. Plaintiff filed the Complaint only after Defendant repeatedly and steadfastly refused to issue any retraction or correction despite multiple pre-suit demands. The sole purpose of this action is to correct maliciously false statements of fact that Defendant disseminated to the public and the press—statements that continue to be treated as true by voters, journalists, and the public at large. Plaintiff is currently a candidate in the 2026 Republican congressional primary for Florida's Second District. Defendant's unchallenged falsehoods (accusing Plaintiff of a "record of fraud," "illegal activity," and being a "scam artist") are actively harming Plaintiff's reputation and campaign in precisely the same public forum in which they were originally published. Far from an attempt to stifle debate, this suit seeks only to ensure that deliberate lies are not permitted to stand as unchallenged "facts" in the marketplace of ideas. That is the antithesis of a SLAPP suit; it is the very purpose of a defamation action.

26

Third, even if the statute could somehow be read to reach this case, an award of fees would be premature. The anti-SLAPP mechanism does not override federal pleading standards or entitle a defendant to fees at the motion-to-dismiss stage when the plaintiff has stated plausible claims that survive Rule 12(b)(6) scrutiny. *See generally Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Discovery is necessary to test Defendant's subjective state of mind and the full context of his statements; premature fee-shifting would improperly short-circuit that process.

In short, this is not a "textbook SLAPP" designed to punish protected political speech. It is a legitimate effort to remedy concrete, ongoing harm caused by knowingly false accusations after Defendant refused every reasonable opportunity to set the record straight. The request for fees should be denied in full.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. In the alternative, Plaintiff requests leave to amend.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the length limitations of Local Rule 7.1(F) and contains 4,789 words, excluding the parts that are exempted. It complies with the type-style requirements of Local Rule 5.1(C) because it is printed in 14-point Century Schoolbook font.

*Respectfully Submitted,*

s/*Robert Vinson, Esq.*
Robert Vinson, Esq.
FL Bar No.:1055127
Gross Law Group, P.A.
21 E. Garden Street, Suite 208
Pensacola, FL 32502
Phone: (850)558-3025
rvinson@grosslaw.com
pleadings@grosslaw.com
*Attorney for Plaintiff*

28